## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DARRELL E. JENKINS,
    Plaintiff

vs

Case No. 1:06-cv-552
(Dlott, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's

application for Supplemental Security Income (SSI). This matter is before the Court on

plaintiff's Statement of Errors (Doc. 11), and the Commissioner's response in opposition.

(Doc. 15).

## PROCEDURAL BACKGROUND

Plaintiff, Darrell E. Jenkins, previously filed applications for SSI and Disability

Insurance Benefits (DIB) in 1988. (Tr. 90). In accordance with the provisions of Public Law

104-121, which provides that substance abuse cannot be a basis for a finding of disability,

plaintiff's benefits were terminated on January 1, 1997. (Tr. 21). On September 16, 1997,

following a hearing, an ALJ concurred with the Agency's determination. The Appeals

Council denied plaintiff's request for review, and plaintiff did not file an appeal.

Thereafter, plaintiff filed another application for DIB on February 1, 2000. Following denials at the initial and reconsideration stages, plaintiff sought a hearing; that request was administratively dismissed. Plaintiff filed a second request for a hearing, which was held in May 2003. The ALJ issued an unfavorable decision on June 9, 2003, from which plaintiff did not file an appeal. (Tr. 89). That decision was the final determination of the Commissioner in plaintiff's claims for DIB; plaintiff was last insured for DIB through December 2001. *Id.*

Plaintiff filed the instant application for SSI benefits on January 14, 2004, alleging disability since January 1, 1997 due to back pain, chronic obstructive pulmonary disease, and brain damage. (Tr. 21, 94). Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before ALJ Andrew Chwalibog. Given the history of plaintiff's prior applications and denials, the period of adjudication for the instant application was June 10, 2003, one day after previous ALJ decision, through March 27, 2006, the date of ALJ Chwalibog's decision in the instant case.

Plaintiff was born in 1957, and was 49 years old at the time of the ALJ's decision. Plaintiff has a limited education with special education classes and previously worked as a bricklayer. (Tr. 95, 100).

On March 27, 2006, ALJ Chwalibog issued a decision denying plaintiff's SSI application. The ALJ determined that plaintiff suffers from severe impairments of chronic obstructive pulmonary disease, obesity, degenerative disc disease, and a learning disorder in reading (Tr. 23-24), but that such impairments do not meet or equal the level of severity described in the Listing of Impairments. (Tr. 25-27). The ALJ determined that plaintiff's

2

allegations concerning the intensity, duration and limiting effects of his impairments are not entirely credible. (Tr. 28). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform a reduced range of light work. (Tr. 27). Specifically, plaintiff can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently due to his history of degenerative disc disease; can stand and/or walk six hours in an eight-hour workday, for up to one hour at a time; and can sit six hours in an eight-hour workday. *Id.* Given plaintiff's treating physician's report, the ALJ restricted plaintiff from bending; and due to his chronic obstructive pulmonary disease, plaintiff is limited to a clean air environment, and must avoid concentrated exposure to temperature extremes, humidity and wetness. *Id.* The ALJ further determined that due to plaintiff's learning disorder, he is limited to following simple verbal instructions and performing repetitive tasks. *Id.* The ALJ also found plaintiff has a fair ability to relate to others and handle work stresses, and is moderately limited in his ability to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting, but he is able to perform simple, routine tasks. *Id.* The ALJ determined that plaintiff is motivated to perform in a setting with regular expectations and occasional intermittent interaction with others, and few changes. (Tr. 27). The ALJ further determined that plaintiff has no past relevant work as that term is defined in the regulations. (Tr. 30). The ALJ concluded that given the above RFC, plaintiff can perform a significant number of light and sedentary level jobs in the local and national

3

economy, including jobs as a light handpacker and price marker, and sedentary grader/sorter and food preparation worker. (Tr. 30). Consequently, the ALJ found that plaintiff is not disabled under the Act, and therefore not entitled to SSI. The Appeals Council denied plaintiff's request for review (Tr. 4-6), making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work

4

previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the

5

performance of work. 20 C.F.R. § 404.1525(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff's impairment need not precisely meet the criteria of the Listing in order to obtain benefits. If plaintiff's impairment or combination of impairments is medically equivalent to one in the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. § 404.1526(a). The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b).

If plaintiff's alleged impairment is not listed, the Commissioner will decide medical equivalence based on the listed impairment that is most similar to the alleged impairment. 20 C.F.R. § 404.1526(a). If plaintiff has more than one impairment, and none of them meet or equal a listed impairment, the Commissioner will determine whether the combination of impairments is medically equivalent to any listed impairment. *Id*.

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the

6

Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th

Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530.

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 11 at 4-10; Doc. 15 at 2-5) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns two errors in this case. First, plaintiff contends the ALJ erred by not finding plaintiff's impairments equaled Listing 12.05C or 12.05D. Second, plaintiff asserts the ALJ erred by failing to consider the combination of plaintiff's impairments. Plaintiff contends that the ALJ's errors in these regards mandates a reversal of the ALJ's decision for an award of benefits or, in the alternative, a remand for further proceedings. For the reasons that follow, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

### I. The ALJ's Listing Decision is Supported by Substantial Evidence.

Plaintiff argues that the ALJ ignored the evidence that consistently showed plaintiff's impairments would equal Listing 12.05C or 12.05D. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Plaintiff contends his school records and the findings of Dr. Dreyer, Dr. Turner, and

8

Dr. Apgar support functional equivalence from a mental standpoint.  Plaintiff's school records show he was in special education classes. (Tr. 148-150).  Dr. Turner, plaintiff's treating internist, reported in 2002 that it was extremely difficult to explain to plaintiff how to use an inhaler and that plaintiff had "considerable intelligence problems." (Tr. 164).  Dr. Dreyer[1], a consultative psychologist, reported a verbal IQ score of 70, a performance IQ of 79, and a full scale IQ score of 72; that plaintiff had significant memory difficulties; and that plaintiff would likely have difficulty recalling information in a work setting. (Tr. 210).  Dr. Dreyer also reported that plaintiff had limited coping skills and a low frustration tolerance. *Id.*  Dr. Apgar, a consultative doctor of osteopathy, reported that plaintiff has "a significant limitation associated with [his] education." (Tr. 223).  Plaintiff argues that this evidence supports a finding of functional equivalency from a mental standpoint and, along with the physical limitations found by Dr. Candace Duty and Dr. Turner, shows plaintiff equals Listing 12. 05C.

Plaintiff further argues that he should be found medically equivalent to Listing 12.05D because Dr. Dreyer's findings of "significant memory problems," limited coping skills, and low frustration tolerance support at least a marked impairment in mental functioning as required under the listing.

Listing 12.05 is the listed impairment for mental retardation.  Listing 12.05C and Listing 12.05D provide in pertinent part:

Mental Retardation refers to significantly subaverage general intellectual

---

[1]Although plaintiff refers to "Dr. Deardorff" in support of his argument, it appears that Carla S. Dreyer, Psy.D., an associate of Dr. Deardorff's, actually performed the consultative examination and reported the findings to the State Agency. (Tr. 203-210)

functioning with deficits in adaptive functioning[2] initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\*
\*
\*

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Plaintiff must demonstrate that his impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder. *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001). In other words, not only must plaintiff provide an IQ score of Listing level severity, but plaintiff must also provide evidence showing he meets the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05. As recognized by the *Foster* Court, "recent amendments to the regulations further clarify that a claimant will meet the listing for mental retardation only '[i]f [the claimant's] impairment satisfies the diagnostic

---

[2]"Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., (DSM IV)(2000) at page 42. Mental retardation requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. *Id.* at 49.

description in the introductory paragraph *and* any one of the four sets of criteria. . . .' 20

C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) as amended by 65 Fed. Reg. 50746, 50776

(August 21, 2000)." *Foster*, 279 F.3d at 354 (emphasis in the original). Thus, for purposes of

Listing 12.05C and D, plaintiff must show (1) he suffers from "significantly subaverage

general intellectual functioning," (2) he suffers from "deficits in adaptive functioning," (3)

such deficits initially manifested during the developmental period (i.e., before age 22), and (4)

a valid IQ score between 60 through 70 *and* an additional physical or other mental impairment

imposing an additional and significant work-related limitation of function for Listing 12.05C,

or a valid IQ score between 60 through 70 *and* marked restrictions in mental or social

functioning in at least two areas for purposes of Listing 12.05D. *See Foster*, 279 F.3d at 354-

55. *See also Daniels v. Commissioner*, 70 Fed. Appx. 868, 872 (6th Cir. 2003), 2003 W.L.

21774004.

      To the extent plaintiff contends the ALJ erred by failing to find his conditions were

equivalent in severity to Listings 12.05C and D, plaintiff bears the burden of presenting

"medical findings equal in severity to *all* the criteria for the one most similar listed

impairment." *Foster*, 279 F.3d at 355, quoting *Sullivan v. Zebley*, 493 U.S. 521, 531

(1990)(emphasis in the original). Social Security regulations further provide that medical

equivalence "must be supported by medically acceptable clinical and laboratory diagnostic

techniques." 20 C.F.R. § 416.926(b).

      In the instant case, plaintiff fails to present evidence that he meets or equals all the

requirements of Listing 12.05C or 12.05D. As indicated above, plaintiff must present

evidence showing he meets or equals the diagnostic description in the introductory paragraph

of Listing 12.05, *i.e.,* that he suffers from mental retardation: "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." Plaintiff fails to present *any* evidence that he meets the diagnostic description for mental retardation or to articulate what medical findings are equivalent in severity to the diagnostic description for mental retardation. No medical source in the record has diagnosed plaintiff with mental retardation. In fact, Dr. Dreyer opined that plaintiff's IQ testing placed his overall intellectual functioning in the borderline range of intelligence, and not mental retardation. (Tr. 207). Although Dr. Turner observed plaintiff had difficulty in learning to use an inhaler, he did not diagnose plaintiff with mental retardation. Moreover, as the ALJ noted, Dr. Turner is not a psychiatrist or psychologist and his opinion on plaintiff's intellectual functioning is outside the realm of his expertise. (Tr. 26). Thus, the ALJ reasonably concluded that Dr. Turner was not well-qualified to render an opinion regarding plaintiff's mental functioning. *See* 20 C.F.R. § 416.927(d)(5).

In addition, the record evidence demonstrates plaintiff's impairment did not result in deficits in adaptive functioning as required for a diagnosis of mental retardation. Plaintiff testified that he performed his own personal care, drove, walked, shopped, did household chores and attended Alcoholics Anonymous meetings three times a week. (Tr. 26, 105, 347-348). Plaintiff also cared for his eight-year daughter who lived with him (Tr. 159, 341) and was able to maintain interpersonal relationships. (Tr. 155, 213).

Since medical equivalence "must be supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 416.926(b), and plaintiff has failed to identify any medical opinion showing his impairment equaled Listing 12.05C or 12.05D, plaintiff has

12

failed to carry his burden of showing equivalence to a Listing. Substantial evidence supports the ALJ's finding that plaintiff's impairments do not equal these Listings and the ALJ's decision in this regard should be affirmed.

## II. The ALJ did not Fail to Consider the Combination of Plaintiff's Impairments.

Plaintiff contends the ALJ erred by failing to consider the combination of his back impairment, breathing impairment, obesity, hypertension, and mental limitations. Plaintiff cites to MRI findings of a disc herniation at L4-5 with posterior facet arthritis (Tr. 177) and x-ray findings of mild dextroscoliosis and anterior bridging osteophytes. (Tr. 180). Based on these findings, as well as findings of muscle spasms, tenderness, and decreased range of motion (Tr. 176), Dr. Duty limited plaintiff to sitting, standing or walking for no more than 30 minutes at one time. (Tr. 169). Plaintiff argues the ALJ failed to consider these limitations as well as his breathing and mental impairments in assessing his RFC and that when the vocational expert was asked to consider these limitations, he reported there were no jobs. (Doc. 11 at 14-15, Tr. 353).

While it is clear the ALJ must consider the combined effect of plaintiff's impairments in assessing his eligibility for disability benefits, *see Barney v. Secretary of Health & Human Services*, 743 F.2d 448, 453 (6th Cir. 1984), there is substantial evidence in the record establishing the ALJ did so in this case. *See Loy v. Secretary of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir.1990)(per curiam); *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)(per curiam), *cert. denied*, 484 U.S. 1075 (1988). The ALJ found plaintiff suffered from multiple impairments and analyzed each of plaintiff's

13

impairments after carefully considering the entire record. (Tr. 23-25, 27). The ALJ's finding that plaintiff's combination of impairments (plural) did not meet or equal the Listings (Tr. 25) is sufficient to show that the ALJ had considered the effect of the combination of impairments. *See Loy*, 901 F.2d at 1310; *Gooch*, 833 F.2d at 592.

Contrary to plaintiff's argument, the ALJ explicitly considered plaintiff's back impairment and noted that Dr. Duty performed spinal manipulation and massage therapy to provide temporary relief of pain. (Tr. 24). The ALJ further found that in spite of plaintiff's severe degenerative disc disease, plaintiff sought no further treatment, did not use a back brace, needed no assistive device, did not use pain medication, and did not report any other treatment for pain. (Tr. 25). In any event, the ALJ was not bound by Dr. Duty's opinion on plaintiff's physical limitations because as a chiropractor, Dr. Duty is not considered an acceptable source of medical evidence under the regulations. *See* 20 C.F.R. § 416.913(a). *See also Walters v. Commissioner*, 127 F.3d 525, 530-31 (6th Cir. 1997).

The ALJ then discussed plaintiff's obesity and the effect thereof on plaintiff's back pain and breathing difficulties. (Tr. 25). The ALJ went on to analyze plaintiff's mental impairments (Tr. 26-27), and his decision reflects he also considered all of plaintiff's impairments in combination in formulating plaintiff's RFC. (Tr. 27).

Nevertheless, plaintiff contends that the vocational evidence support a finding of disability based on the combination of his impairments. When asked a hypothetical question assuming a person with the physical limitations identified by the ALJ and having a "marked" impairment in following simple instructions and difficulty in recalling information, the vocational expert testified there would be no jobs such a person could perform. (Tr. 353).

**14**

This hypothetical question incorporated some of the mental limitations found by Dr. Dreyer during her consultative examination. (Tr. 209). The ALJ, however, gave only little weight to Dr. Dreyer's consultative examination. (Tr. 29). His decision in this regard is supported by substantial evidence.

As the ALJ noted, the limitations suggested by Dr. Dreyer were inconsistent with the other medical evidence of record, including Dr. Apgar's conclusion that plaintiff was able to maintain sustained concentration throughout the examination process (Tr. 223); Dr. Turner's opinion that plaintiff could hold down a job if it was menial labor (Tr. 164); and Drs. Meyer's and Swain's report that plaintiff was capable of simple and moderately complex routine work that he was motivated to perform, in a setting with regular expectations, occasional intermittent interactions with others, and few changes. (Tr. 302). The ALJ also noted that Dr. Dreyer's report was largely based on plaintiff's subjective allegations which the ALJ found were not entirely credible. (Tr. 29-30). It is the ALJ's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). Because the ALJ gave a reasoned, supported evidentiary basis for rejecting Dr. Dreyer's limitations, his decision in this respect is supported by substantial evidence and is not in error.

15

Thus, plaintiff's contention that the ALJ failed to consider plaintiff's impairments in combination is without support in the record.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be dismissed from the docket of this Court.

Date: 10/29/07

Timothy S. Hogan
United States Magistrate Judge

16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DARRELL E. JENKINS,
    Plaintiff

    vs                                Case No. 1:06-cv-552
                                        (Dlott, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

          Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing

date of this R&R. That period may be extended further by the Court on timely motion by

either side for an extension of time. All objections shall specify the portion(s) of the R&R

objected to, and shall be accompanied by a memorandum of law in support of the objections.

A party shall respond to an opponent's objections within **TEN DAYS** after being served with

a copy of those objections. Failure to make objections in accordance with this procedure may

forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,*

638 F.2d 947 (6th Cir. 1981).

17